Houck, J.
The defendant in error was the relator in the court below, and the plaintiff in error was the respondent.
The record discloses that the action below was based on a petition in mandamus seeking to compel the county auditor of Tuscarawas county, Ohio, to issue his warrant on the county treasurer of said *122 county for the sum of $148 in favor of Upsure D. Miller, the relator, one of the members of the deputy state supervisors of elections of said county, the said sum alleged to be due him being for service rendered in conducting the primary election held on the 25th day of April, 1910.
The plaintiff in error, respondent below, filed a general demurrer to said petition, which was heard by the trial judge and overruled, and, respondent not desiring to plead further, judgment was entered for the relator, granting to him all the relief prayed for in his petition, and directing that a peremptory writ of mandamus issue ordering and directing the said respondent, Robert H. Nussdorfer, as the county auditor of Tuscarawas county, Ohio, to issue his warrant on the county treasurer of said county for the sum of $148 in favor of Upsure D. Miller, the relator.
To the overruling of the demurrer and the entering of the judgment in favor of said relator the plaintiff in error prosecutes error to this court, asking for a reversal of the judgment of the common pleas court.
Counsel for plaintiff in error urge a reversal of the judgment below upon two grounds:
1. That the following allegation in the petition is not sufficient in law:
“There is money in the county treasurer’s hands to the credit of the proper fund, and not otherwise appropriated, to pay the full amount of relator’s claim for compensation.”
2. That there is no provision of law authorizing the compensation claimed by the relator, or the payment of same from any source.
*123 Coming now to the first ground of alleged error, the plaintiff in error contends that the language in the petition is not sufficient in law to impose upon the county auditor the duty to issue a warrant on the county treasurer; -that it cannot be properly claimed that it is the duty of the county auditor to issue a warrant to pay money out of the county funds, unless it affirmatively appears by allegations in the petition that there is money in the treasury to the credit of the fund from which the claim is payable and that it has been appropriated by the county commissioners for the payment of the particular claim in question.
We cannot agree with learned counsel as to their contention in this respect. From our examination of the language used we feel that the allegation in the petition, “that there is money in the county treasurer’s hands to the credit of the proper fund, and not otherwise appropriated,” etc., is sufficient. All that is required in this regard is that the petition should affirmatively show that the money necessary to pay the claim is in the county treasury, and that it is available for the purpose for which it is sought to be used.
As to the second ground of alleged error, the plaintiff in error insists that deputy state supervisors of elections are to be paid a compensation of $2 for each election precinct in the county, for their services in conducting all primary elections held during any one year, and the defendant in error as strongly insists that they are to be paid $2 for each election precinct in the county in conducting each and every primary election required or authorized by law to be held in such county.
*124 The parties to this suit, in support of their respective claims, rely upon the provisions of Section 4990, General Code, which is as follows:
“For their services in conducting primary elections, members of boards of deputy state supervisors shall each receive for his services the sum of two dollars for each election precinct in his respective county, and the clerk shall receive for his services the sum of three dollars for each election precinct in his county, and judges and clerks of election shall receive the same compensation as is provided by law for such officers at general elections.”
The real question presented for our determination is, What is the proper and correct interpretation and construction to be placed on said Section 4990, General Code?
It is the duty of courts in construing a statute to give effect to the intent of the lawmaking power, and seek for that intent in every legitimate way. But, first of all, this should be sought in the words and language used; and if the words are free from ambiguity and doubt, and express plainly, clearly and distinctly the sense of the framers of the statute, there is no occasion to resort to other means of interpretation. In other words, the statute itself, the words and sentences contained therein, furnishes the very best means for its own interpretation. If the sense in which the words are intended to be used can be clearly ascertained, the intention thus indicated will and must prevail.
We think there can be no doubt that the primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the *125 language that he has incorporated in the statute. He is presumed to know the meaning of words and the rules of grammar; and courts have no function of legislation, but must construe and interpret a statute by means of the words and sentences contained therein.
Counsel for plaintiff in error maintain that the construction of Section 4990, General Code, which must be adopted in this case, is that deputy state supervisors of elections are entitled to an annual salary of $2 for each voting precinct in the county for conducting primary elections, and it is not changed in amount by reason of more than one primary election being held.
We cannot conceive how counsel arrive at such a construction. They are assuming that the statute provides for an annual compensation, which it does not.
It is conceded that whatever compensation, if any, deputy state supervisors of elections are to receive for the holding of primary elections is provided for under Section 4990, General Code. We feel that it would be just as reasonable for counsel to claim, under the language used in this section, that the compensation they now concede for one year should be compensation for two years; because the statute, so far as language is concerned, is silent as to whether or not this compensation shall be for one, two, or three years. And we certainly have no right to read into a statute, for the purpose of construction, any language that is not contained therein.
It seems clear to us that if the legislature had intended that the compensation provided in Section *126 4990 was to be for all primary elections held within the year, it would have inserted therein the same or similar language as that used in Section 4822, General Code, to-wit, “during any year.”
Again, it will be observed from a careful examination of the language used in the statute before us for construction that the lawmakers had in mind, as the basis for fixing the compensation to be allowed for services rendered by deputy state supervisors of elections in conducting primary elections, the number of voting precincts in the county, and that the compensation was fixed at $2 for each precinct and was so fixed without any reference to time. Therefore, in view of these facts, and giving to the language used its plain and simple meaning, we hold that it was intended by the legislature that deputy state supervisors of elections when holding primary elections should be paid $2 for each election precinct for each and every primary election held under authority of law.
The section of the General Code, under consideration is not as clear and explicit as it might be, but we are to construe the language therein so as to give to the words therein their ordinary and popular meaning, thereby affording a sensible and intelligent construction to every part of the same and avoiding absurd and unjust consequences; and, if possible, so as to make it valid and effective, thus carrying out the intention of the legislature.
When the legislature, within powers given it by our constitution, has enacted a statute, and fixed the rights of the people thereunder, it is not within the province of a court to declare a different policy or attach different rights. In this matter the law *127 making body is supreme, and it is presumed that it will pass no unjust or unwise laws. If the statute under consideration is unwise, unjust, or does not meet with popular approval, the remedy is with the people and the legislature, and not with the courts.
It therefore follows from what we have already said that we are of the opinion that the judgment of the common pleas court is right, and should be affirmed.

Judgment affirmed.

Shields and Powell, JJ., concur.